DTF



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 8, 2013

**BY HAND/ ELECTRONIC TRANSMISSION**

Honorable Laura Taylor Swain
United States District Court
Southern District of New York
500 Pearl Street, Suite 755
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/13

    Re: *United States v. Daniel Bonventre, et al.*
        S10 10 Cr. 228 (LTS)

Dear Judge Swain:

    The Government respectfully submits this letter in response to the August 7, 2013 letters submitted by counsel for defendant Perez and counsel for defendant Bonventre. In both letters, defense counsel request a 60-day adjournment of the trial based on the S10 Superseding Indictment (the "Superseding Indictment") filed last week, more than two months before the scheduled start of trial. Many of the premises set forth in the defendants' letters are incorrect, and there is no justification for the grant of any continuance. The Court should deny the defendants' applications.

    The defendants' claim that the Superseding Indictment significantly altered the nature of the case is wrong. Mr. Krantz and Mr. Frisch's letters essentially make three claims regarding the Superseding Indictment: (1) the new Indictment presents an "entirely different spin on many of the core facts" and "introduce[s] a wealth of entirely new allegations" (Krantz Let. at 2); (2) the new Indictment "affects defendant's prior motions for severance and a bill of particulars" (Krantz Let. at 3); and (3) the new Indictment constitutes "an abrupt 180 turn from its prior pronouncements about the case and expressly tethers charges against Mr. Bonventre to the Ponzi scheme." (Frisch Let. at 2). All of these allegations represent a fundamental misreading of the Superseding Indictment.

    First, the Superseding Indictment presents neither an "entirely different spin" on the core facts nor "a wealth of entirely new allegations." (Krantz Let. at 2). To be sure, the Superseding Indictment substantially condenses and often rewords the basic facts underlying the defendants' crimes. But the purpose of doing so is clear: insofar as the Indictment will be read or provided to the jury, a simpler and more streamlined Indictment that is approximately 70 pages long is far easier for a jury to understand and absorb than the approximately 150 pages of the prior S8 Indictment. In any event, the essential facts in both Indictments are identical and easily reducible to a common theme – all five defendants were employees at Madoff Securities and all

five participated in various crimes in connection with the massive fraud that was being committed there. Critically, the charges in the new Indictment are exactly the same – there are no additional charges in the S10 Superseding Indictment and no new defendants have been added.

The supposed examples of significant changes cited by defense counsel are baseless. For example, defense counsel argues that there are "new allegations" that defendants O'Hara and Perez "created and/or maintained proprietary software designed to give the Madoff Securities investment advisory business the appearance of a legitimate firm, when in fact the investment advisory business was entirely a fraud." (Krantz Let. at 2) (citing S10 Indictment ¶ 8). There is no portion of this language that defense counsel can credibly assert constitutes a "new allegation." Certainly, he cannot suggest that the language stating that the investment advisory business was entirely a fraud constitutes a new allegation – this fact has been at the heart of the case since its inception. Indeed, the very first sentence of the background section of the S8 Indictment, entitled "The Ponzi Scheme," stated "[f]rom at least as early as the 1970s through or about December 11, 2008, Madoff and other co-conspirators perpetrated a scheme to defraud the clients of the BLMIS IA business ("IA Clients") by accepting billions of dollars of IA client funds under false pretenses, failing to invest the IA Client funds as promised, creating and disseminating false and fraudulent documents to IA Clients . . . creating false books and records of BLMIS, and lying to the SEC and an accounting form to conceal the fraudulent scheme." (S8 Indictment ¶ 16). Nor can defense counsel credibly claim that the language asserting that defendants O'Hara and Perez created software to give the IA business the appearance of a legitimate firm is a "new allegation." The only job at Madoff Securities these defendants had was the creation and maintenance of software, as specified in the S8 Indictment. (S8 Indictment ¶ 13). The S8 Indictment explicitly laid out that the fraud was effectuated through "computer programs developed and maintained by JEROME O'HARA and GEORGE PEREZ, the defendants . . . ." (S8 Indictment ¶ 28-33). It is inexplicable that counsel labels Paragraph 8 of the S10 Superseding Indictment a "new allegation."

Similarly, defense counsel is incorrect where he alleges that there are "new allegations" that, as a result of the actions of the defendants, the "Madoff securities Ponzi scheme lasted for well over 30 years." (Krantz Let. at 2) (citing S10 Indictment ¶ 10). Again, the very first line of the background section of the S8 Indictment stated that Madoff and his co-conspirators, the defendants, had "perpetrated a scheme to defraud the clients of the BLMIS IA business" beginning "at least as early as the 1970s through on or about December 11, 2008." (S8 Indictment ¶ 16). Moreover, defense counsel improperly claims that there are "new allegations" that defendants O'Hara, Perez and Bonventre were actually instructed "to create fake DTC reports reflecting that client assets were held by DTC." (Krantz Let. at 2) (citing S10 Indictment ¶ 29). But the S8 Indictment contained an entire section entitled "DANIEL BONVENTRE, JEROME O'HARA AND GEORGE PEREZ Created False and Fraudulent DTC Reports." (S8 Indictment at 42). In this section, the S8 Indictment detailed how these three defendants created false DTC reports designed to appear real and show "the purported holdings of the IA Special Clients." (S8 Indictment ¶¶ 83-85).

There are more false claims of "new allegations," but it is unnecessary to conduct an exhaustive examination of these claims – they are all obviously descriptions of conduct that the Government made clear would be part of the case either explicitly in the prior Indictment or through the production of discovery. Defense counsel's claim that the Superseding Indictment constitutes a barrage of "new allegations" is spurious.

Regardless, to the extent that the Superseding Indictment offers additional minor details about the nature of the evidence that will be introduced against the defendants, this is not an appropriate basis for requesting an adjournment. As Your Honor instructed with regard to the defendants' application for a bill of particulars, the defendants are not entitled to "disclosure about the precise manner in which the charged crimes were allegedly committed or the particular acts in which a defendant allegedly participated, or for which he is being held responsible." *United States v. Bonventre*, Slip Copy, No. 10 Cr. 228 (LTS), --- F. Supp. 2d. ----, 2013 WL 2303726 at *6 (S.D.N.Y. May 28, 2013). Indeed, the cases are legion indicating that no continuance is required even in situations where the Government makes significant changes to an Indictment on the eve of trial. *See, e.g., United States v. Grossman*, 843 F.2d 78, 83-85 (2d Cir. 1988) (holding district court did not abuse its discretion in failing to grant the defendant in 19-count securities fraud trial a continuance related to superseding indictment filed two days before trial and observing that the defendant "c[ould] hardly have been prejudiced by the absence of . . . optional information in the first indictment"); *see also United States v. Stringer*, No. S 10 Cr. 632 (GEL), 2012 WL 11269 at *10 (S.D.N.Y. Jan. 3, 2012) (no continuance was required when Government filed superseding indictment one month before fraud trial which added additional victims, particularly where Government took steps to guide defendant through evidence and victims had been previously disclosed in Rule 16 discovery). Here, of course, no new charges have been added, the essential facts of the Indictment are unaltered, and we are still two months from the beginning of jury selection. Indeed, at this point, with the start of witness testimony to begin in mid-October (more than two months away), the defendants are already in possession of an abundance of information about the Government's case.

Moreover, the very notion that, by providing additional details regarding the nature of the case, the Government has somehow unfairly surprised defense counsel runs counter to logic and to the law. Defense counsel has had access in discovery to nearly every document that will be introduced at trial for a period of years. Today, the Government has provided a highly detailed exhibit list which provides not only descriptions of each item the Government anticipates seeking to admit in evidence, but also coding indicating the Government's best information regarding which defendants are responsible for the creation of documents and to which defendants relevant documents are related. Further, the Government endeavored to organize the exhibit list in a manner that would be convenient for the Court and the parties to utilize. For example, documents are numbered by categories generally tied to the source of the exhibit (*e.g.*, exhibits are sorted by categories such as "General Ledger / Stock Ledger / Trade Blotters" and "Defendant Generated Documents," a category further subdivided by each defendant). *See* Government's Exhibit List, attached as Exhibit A. Given the defendants' lengthy access to

discovery, the early production of a detailed exhibit list and 3500 material, the details set forth in both the Government's pretrial motions and the Indictments, there is no unfair surprise to the defendants here, but instead substantial pretrial disclosure of the Government's case which goes well beyond what criminal defendants typically receive.

Second, the defendants are wrong where they assert that the new Indictment "affects defendant's prior motions for severance and a bill of particulars." (Krantz Let. at 3). No new defendants have been added to the case. No new charges have been added. The nature of the charges, and of course the related proof, against each of the defendants is the same. Given these facts, the defendants cannot demonstrate that their prior motions could be altered in any relevant way.

Third, the new Indictment does not constitute "an abrupt 180 turn from [the Government's] prior pronouncements about the case [by] expressly tether[ing] charges against Mr. Bonventre to the Ponzi scheme." (Frisch Let. at 2). In his supplemental letter, Bonventre seeks to adjourn trial in this matter for 60-days because, according to him, the Government "sat on" allegations that Bonventre "knowingly participated in the Ponzi scheme" until the Superseding Indictment was returned by a grand jury last week. (Frisch Let. at 2-3). Defense counsel is simply incorrect. As detailed above, the entire S8 Indictment goes to the fact that Bonventre and his coconspirators knowingly participated in various aspects of the fraud that constituted the Ponzi scheme. The S10 Superseding Indictment reiterates each and every count against Bonventre from the S8 Indictment and adds no new charges. Likewise, the "new allegations" that Bonventre highlights are not "new." Numerous portions of the S8 Indictment explicitly indicated that Bonventre knowingly participated in activities designed to advance the Ponzi scheme described in earliest paragraphs of the S8 Indictment. (*See, e.g.,* S8 Indictment ¶ 154 ("As DANIEL BONVENTRE . . . and others knew [the Madoff Securities general ledger] and its supporting books and records, as well as the FOCUS Reports filed by BLMIS with the SEC, were false and misleading in material ways."; S8 Indictment ¶ 156 (" DANIEL BONVENTRE, the defendant, knew that [the BLMIS books and records misrepresented $154 million in bonds as belonging to BLMIS when they in fact belonged to a client]; S8 Indictment ¶ 173-188 (describing how Bonventre and coconspirators "enriched themselves through BLMIS **while perpetuating the fraud**" through the use of "backdated, fictitious trades") (emphasis added). It is difficult to square these explicit allegations in the S8 Indictment of Bonventre's knowing participation in the various frauds that constituted the Ponzi scheme with his claim that the new Indictment constitutes a "180 turn." Indeed, it is impossible to square this claim with the portion of the S8 Indictment described earlier in this letter, entitled "DANIEL BONVENTRE, JEROME O'HARA AND GEORGE PEREZ Created False and Fraudulent DTC Reports." (S8 Indictment at 42, ¶¶ 83-85) (describing how Bonventre and codefendants created false DTC reports designed to appear real and show "the purported holdings of the IA Special Clients."). There is no ambiguity in an allegation that Bonventre participated in a scheme to create false records showing the existence of securities that had never been purchased, activity at the very heart of the Ponzi scheme. There was no "180 turn" in the filing of the S10 Superseding Indictment.

Moreover, even a cursory review of the parties' pretrial motion practice in this case and the Court's May 28, 2013 Memorandum Opinion and Order deciding those motions demonstrates that since at least March of 2013 Bonventre has been aware of the allegations against him concerning his role in, and understanding of, the Ponzi scheme. Accordingly, his claim that an adjournment is warranted because of "surprise" allegations in the S10 Superseding Indictment should be rejected. Previously, in his pretrial motion papers, Bonventre sought a bill of particulars that, among other things, required the Government to state whether the prior S8 Indictment charged Bonventre with "knowing participation in Mr. Madoff's Ponzi scheme." (Memorandum of Law in Support of Bonventre's Motion for Severance and Certain Disclosures, dated January 29, 2013 (the "Bonventre Pretrial Motion"), at 6-7.) In response, the Government argued that "[w]hile the jury does not have to find that Bonventre was a knowing participant in Madoff's Ponzi scheme in order to convict him of the crimes charged, there certainly will be sufficient evidence for a jury to find that Bonventre did, in fact, know that Madoff was engaged in a Ponzi scheme." (Government's Memorandum in Law in Opposition to Defendant's Pretrial Motions, dated March 4, 2013, at 81). The Government went on to outline the "myriad ways" Bonventre participated in the Ponzi scheme, including "by creating fake, backdated trades that were 'executed' on paper only, engaging in an accounting fraud that concealed transfers to and from the IA business, creating false and misleading documents to show the SEC and outside auditors representing clients of BLMIS during audits, and creating fake documents to mislead IRS auditors performing an audit of Madoff's income tax returns." (Id.)

Thereafter, in ruling on Bonventre's motion for a bill of particulars, the Court found that "[t]he Government's opposition brief sufficiently alerts Bonventre as to its theories concerning the crimes with which he is charged." *Bonventre*, 2013 WL 2303726, at *7. The Court then went on to rule that "[i]t will be the jury's role at trial to determine whether he was a 'knowing participant' in the larger Ponzi scheme." *Id.* Thus, Bonventre's claim that he did "not know whether he need[ed] to prepare to defend himself from the charge of knowing participation in the Ponzi scheme and/or something else" until the return of the Superseding Indictment (Frisch Let. at 1 (quoting Bonventre Pretrial Motion, at 7)) is wholly without merit. The above-outlined record in this case is clear that Bonventre has been aware since at least the filing of the Government's pretrial opposition papers, and definitively since May 2013 when the Court issued its opinion, that he would have to address these allegations at trial. Accordingly, Bonventre has not articulated any reason that a 60-day adjournment is warranted.

In sum, there is nothing new or surprising in the S10 Superceding Indictment as it relates to Bonventre that warrants an adjournment of the trial. Indeed, given the fact that the Court expressly stated in its May 28, 2013 Opinion that "[i]t will be the jury's role at trial to determine whether he was a 'knowing participant' in the larger Ponzi scheme," *Bonventre*, 2013 WL 2303726, at *7, it is difficult to comprehend how Bonventre can claim that he did not understand until now that he is "alleged to have knowingly participated in the Ponzi scheme," (Frisch Let. at 2-3). Accordingly, his application should be denied.

Considering all of these facts, there simply can be no justification for any delay in the trial schedule. It is additionally important to note that any continuance would prejudice the Government immeasurably. In anticipation of a five-month trial beginning in October, the Government has spent numerous hours preparing its witnesses, its exhibits, and the detailed exhibit list with which it has provided the defendants. The defendants are in possession of a detailed roadmap of the Government's case, months ahead of the start of jury selection. The Government has also planned for the appearance of numerous witnesses in the Fall of this year, under the already-determined trial schedule, some of whom will have to travel great distances to be present. A delay in the trial schedule would be extraordinarily prejudicial. Given these facts, and given that the defendants' request is completely meritless, the Court should deny the defendant's applications.

Respectfully,

PREET BHARARA
United States Attorney

By: _____/s/_____
John Zach
Randall Jackson
Matthew Schwartz
Assistant United States Attorneys
Tel.: (212) 637-1029

cc: BY ELECTRONIC MAIL

All counsel of record